UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JANNAH S. F.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:20-cv-02070-DLP-JPH |
| | ) |
| KILOLO KIJAKAZI, | ) |
| | ) |
| Defendant. | ) |

## ORDER

Plaintiff Jannah S. F. requests judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for Disability Insurance Benefits ("DIB") under Title II and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. *See* 42 U.S.C. §§ 405(g); 1383(c). For the reasons set forth below, the Court hereby **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further consideration.

I. **PROCEDURAL HISTORY**

On June 5, 2017, Jannah filed her applications for Title II DIB and Title XVI SSI. (Dkt. 14-5 at 2-5, 18-22, R. 191-194, 207-211). Jannah alleged disability resulting from Achilles tendonitis; plantar fasciitis; tarsal tunnel; bone spurs;

---

[1] In an effort to protect the privacy interests of claimants for Social Security benefits, the Southern District of Indiana has adopted the recommendations put forth by the Court Administration and Case Management Committee of the Administrative Office of the United States Courts regarding the practice of using only the first name and last initial of any non-government parties in Social Security opinions. The Undersigned has elected to implement that practice in this Order.

1

osteoarthritis; degenerative disc disease; disc bulge; patellofemoral disorder; and sural neuropathy. (Dkt. 14-6 at 14, R. 269). The Social Security Administration ("SSA") denied Jannah's claim initially on October 18, 2017, (Dkt. 14-3 at 24-25, R. 77-78), and on reconsideration on January 30, 2018. (Id. at 50-51, R. 103-104). On February 28, 2018, Jannah filed a request for a hearing, which was granted. (Dkt. 14-4 at 29, R. 132).

On October 2, 2019, Administrative Law Judge ("ALJ") Jan Leventer conducted a hearing in Detroit, Michigan with Plaintiff and her counsel appearing, and vocational expert Harry Cynowa participating by phone. (Dkt. 14-2 at 34, R. 33). On October 18, 2019, ALJ Leventer issued an unfavorable decision finding that Jannah was not disabled. (Id. at 16-25, R. 15-24). On November 15, 2019, the SSA received Jannah's appeal of the ALJ's decision. (Dkt. 14-4 at 85-86, R. 188-89). On June 10, 2020, the Appeals Council denied Jannah's request for review, making the ALJ's decision final. (Dkt. 14-2 at 2-6, R. 1-5). Jannah now seeks judicial review of the ALJ's decision denying benefits pursuant to 42 U.S.C. §§ 405(g); 1383(c).

## II.   STANDARD OF REVIEW

To qualify for disability, a claimant must be disabled within the meaning of the Social Security Act. To prove disability, a claimant must show she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). To meet this definition, a claimant's impairments

must be of such severity that she is not able to perform the work she previously engaged in and, based on her age, education, and work experience, she cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The SSA has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 416.920(a). The ALJ must consider whether:

> (1) the claimant is presently [un]employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves [her] unable to perform h[er] past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy.

*Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351-52 (7th Cir. 2005) (citation omitted). An affirmative answer to each step leads either to the next step or, at steps three and five, to a finding that the claimant is disabled. 20 C.F.R. § 416.920; *Briscoe*, 425 F.3d at 352. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy. *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995); *see also* 20 C.F.R. § 416.920. (A negative answer at any point, other than step three and five, terminates the inquiry and leads to a determination that the claimant is not disabled.).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from

medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). The RFC is an assessment of what a claimant can do despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004). In making this assessment, the ALJ must consider all the relevant evidence in the record. *Id*. at 1001. The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work in the national economy. *See* 20 C.F.R. § 416.920(a)(4)(iv)-(v).

The claimant bears the burden of proof through step four. *Briscoe*, 425 F.3d at 352. If the first four steps are met, the burden shifts to the Commissioner at step five. *Id*. The Commissioner must then establish that the claimant – in light of her age, education, job experience, and residual functional capacity to work – is capable of performing other work and that such work exists in the national economy. 42 U.S.C. § 423(d)(2); 20 C.F.R. § 416.920(f).

Judicial review of the Commissioner's denial of benefits is to determine whether it was supported by substantial evidence or is the result of an error of law. *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001). This review is limited to determining whether the ALJ's decision adequately discusses the issues and is based on substantial evidence. Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019); *Rice v. Barnhart*, 384 F.3d 363, 369 (7th Cir. 2004). The standard demands more than a scintilla of

evidentiary support but does not demand a preponderance of the evidence. *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001). Thus, the issue before the Court is not whether Jannah is disabled, but, rather, whether the ALJ's findings were supported by substantial evidence. *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995).

Under this administrative law substantial evidence standard, the Court reviews the ALJ's decision to determine if there is a logical and accurate bridge between the evidence and the conclusion. *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008)). In this substantial evidence determination, the Court must consider the entire administrative record but not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the Commissioner." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000), *as amended* (Dec. 13, 2000). Nevertheless, the Court must conduct a critical review of the evidence before affirming the Commissioner's decision, and the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

When an ALJ denies benefits, she must build an "accurate and logical bridge from the evidence to [her] conclusion," *Clifford*, 227 F.3d at 872, articulating a minimal, but legitimate, justification for the decision to accept or reject specific evidence of a disability. *Scheck v. Barnhart,* 357 F.3d 697, 700 (7th Cir. 2004). The ALJ need not address every piece of evidence in her decision, but she cannot ignore a line of evidence that undermines the conclusions she made, and she must trace

5

the path of her reasoning and connect the evidence to her findings and conclusions. *Arnett v. Astrue,* 676 F.3d 586, 592 (7th Cir. 2012); *Clifford,* 227 F.3d at 872.

### III. BACKGROUND

#### A. Factual Background

Jannah was 47 years old as of her alleged onset date of November 7, 2017. (Dkt. 14-2 at 23, R. 22). She has a high school education. (Id.). She has past relevant work history as a warehouse picker packer, lot crew attendant, and warehouse packer. (Id.).

#### B. ALJ Decision

In determining whether Jannah qualified for benefits under the Act, the ALJ employed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520(a) and 416.920(a) and concluded that Jannah was not disabled. (Dkt. 14-2 at 16-25 R. 15-24). At Step One, the ALJ found that Jannah had not engaged in substantial gainful activity since the alleged onset date of November 7, 2017. (Id. at 18-19, R. 17-18).

At Step Two, the ALJ found that Jannah suffered from the following severe impairments: status post spinal neurostimulator emplacement surgery; chronic cervical spondylosis, herniated disc at C5-6, and C6-7 disc osteophytes; cervical radiculopathy; fibromyalgia; cervicalgia; degenerative joint disease of the right foot; left foot heel spur; early degenerative joint disease of the bilateral knees; right shoulder tendinitis; degenerative joint disease and a superior labral, anterior to posterior (SLAP) tear of the right shoulder; lateral epicondylitis of the right elbow;

6

medial epicondylitis of the left elbow; mild arthritis of the right middle finger; thyromegaly; obstructive and central sleep apnea; and degenerative disc disease of L4-5. (Id. at 19, R. 18).

At Step Three, the ALJ found that Jannah's impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. § Pt. 404, Subpt. P, App. 1. (Id. at 19-20, R. 18-19 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926)).

After Step Three but before Step Four, the ALJ found that Jannah had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b)" with the following additional limitations: sit for up to 6 hours, stand for up to 3 hours, and walk for up to 3 hours; operate foot controls right and left occasionally; operate hand controls right and left frequently; reach overhead right and left occasionally; handle items left and right frequently; finger and feel items left and right frequently; climb ramps and stairs occasionally; never climb ladders, ropes, or scaffolds; never crawl; never work at unprotected heights; never work with moving mechanical parts; occasionally operate a motor vehicle; and never work with vibration equipment. (Dkt. 14-2 at 20, R. 19).

At Step Four, relying on the vocational expert's testimony, the ALJ determined that Jannah is not able to perform her past relevant work. (Id. at 23, R. 22). At Step Five, relying on the vocational expert's testimony and considering Jannah's age, education, work experience, and RFC, the ALJ concluded that she can perform jobs that exist in significant numbers in the national economy. (Id. at 23-

24, R. 22-23). The ALJ thus concluded that Jannah was not disabled. (Id. at 24-25, R. 23-24).

IV. ANALYSIS

Jannah argues that this matter should be remanded because (1) the ALJ offered a faulty assessment of her subjective symptoms pursuant to Social Security Ruling 16-3p and (2) the RFC and hypothetical questions presented to the vocational expert do not include all limitations supported by the record. (Dkt. 16 at 4). The Court will address each argument in turn.

A. Subjective Symptoms

First, Plaintiff argues that the ALJ's SSR 16-3p analysis of her subjective symptoms was erroneous because it only considered the objective medical evidence and no other information as required by the relevant factors. (Dkt. 16 at 19-22). The Commissioner maintains that the ALJ is not required to discuss every factor listed in the ruling and that the credibility determination must be upheld unless found to be patently wrong. (Dkt. 19 at 24-27). Moreover, the Commissioner asserts that Plaintiff's argument is merely a "generic recitation of case law," devoid of "any citation or reference to evidence in the record . . ." and that the Court should consider this argument waived. (Id. at 26). The Court agrees.

Plaintiff has not even attempted to apply the facts of her case to the legal authority she cites; indeed, this section contains not a single reference to the record. (*See* Dkt. 16 at 19-22). The Seventh Circuit has held in a Social Security Disability context that "[p]erfunctory and undeveloped arguments are waived, as are

8

arguments unsupported by legal authority." *Krell v. Saul*, 931 F.3d 582, 586 n.1 (7th Cir. 2019) (quoting *Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016)). Although Plaintiff lists the factors that an ALJ should consider according to SSR 16-3p, and contends that the ALJ did not comply with that SSR, she fails to apply any of those factors to the evidence or demonstrate that a more comprehensive discussion of the factors would have supported a different outcome. The Court declines to supply that discussion for the Plaintiff. Because this credibility argument is perfunctory and undeveloped, the Court deems it waived.

### B. RFC Analysis

Jannah next argues that the ALJ failed to adequately explain the RFC limitations for arm and hand usage. (Dkt. 16 at 23-28). The Commissioner maintains that the ALJ's analysis is supported by substantial evidence. (Dkt. 19 at 14-20).

The Seventh Circuit has defined the RFC as "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from her impairments." *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). It is the most the claimant can do despite her limitations. 20 C.F.R. § 404.1545(a)(1). "A regular and continuing basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1.

The RFC is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities. *Id.* at *3. The relevant evidence includes medical history; medical signs and laboratory findings;

9

the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id.* at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id.* An ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings), and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7.

When determining the RFC, the Regulations and Seventh Circuit case law make clear that an ALJ's RFC assessment must incorporate all of a claimant's functional limitations supported by the medical record. *See Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) ("When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment."); *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019); *see also* SSR 96-8p; 20 C.F.R. § 404.1545(a). Furthermore, if an ALJ relies on testimony from a vocational expert ("VE"), the hypothetical question the ALJ poses to the VE "must incorporate all of the claimant's limitations supported by the medical evidence in the record." *Varga,* 794 F.3d at 813.

Plaintiff argues that she presented evidence of significant limitations in her hands, wrists, fingers, and arms supported by the medical evidence, her subjective

10

symptoms, and her doctor's source statement, and that the ALJ failed to adequately explain why the RFC limitations for her hands and arms captured her physical restrictions. (Dkt. 16 at 23-28). Specifically, Plaintiff maintains that the ALJ downplayed the severity of her arm and hand impairments by relying on temporary improvements and unrelated physical examination facts. (Id. at 27-28). Plaintiff further contends that the ALJ did not explain, beyond summarizing the medical evidence, why the record supported her RFC conclusions. (Id. at 28).

In her opinion, the ALJ summarizes some of the medical evidence related to Jannah's hands, wrists, arms, and shoulders, then concludes, in relevant part: "[i]n sum, the above residual functional capacity assessment is supported by physical examinations, radiographic images, . . . the opinion evaluation and other factors as discussed above. These findings, coupled with the claimant's improvement with consistent treatment, compliance with medication, and her normal physical examinations are not consistent with her allegations of disabling limitations." (Dkt. 14-2 at 23, R. 22). Aside from the RFC finding itself that included limitations for operating hand controls, reaching, handling, and fingering, the ALJ never mentions any of these non-exertional limitations[2] in her analysis.

As Plaintiff notes, however, summarization of the objective medical evidence does not constitute the necessary RFC analysis. *Joann P. v. Kijakazi*, No. 2:20-cv-

---

[2] Non-exertional limitations are those limitations or restrictions that affect a claimant's ability to meet the demands of jobs other than the strength demands. Some examples of non-exertional limitations or restrictions includes: difficulties maintaining attention or concentrating; difficulties tolerating some physical features of certain work settings, such as dust or fumes; difficulties performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling or crouching. 20 C.F.R. § 404.1569a.

11

241, 2021 WL 3076965, at *3-5 (N.D. Ind. July 21, 2021) (citing *Perry v. Colvin*, 945 F. Supp. 2d 949, 965 (N.D. Ill. 2013). Additionally, the ALJ failed to explain, with any specificity, how the evidence she cited supports the limitations for hand controls, reaching, handling, and fingering that she assigned. *See Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005) (ALJ's failure to include narrative discussion of how evidence supports RFC is in itself sufficient to warrant remand); *see also Adams v. Saul*, 412 F. Supp. 3d 1024, 1028 (E.D. Wis. 2019) (no logical bridge where ALJ failed to specify how the record supports limitations for handling and fingering); *John H. v. Kijakazi*, No. 2:20-cv-428, 2021 WL 5881646, at *10 (N.D. Ind. Dec. 13, 2021) (same). Without any analysis, the Court is left to guess why Jannah is able to occasionally reach or operate hand controls, or frequently handle or finger items. *See Donna R. M. v. Comm'r of Soc. Sec.*, No. 3:20-cv-542-MGG, 2021 WL 5881645, at *5 (N.D. Ind. Dec. 13, 2021) (without ALJ discussion of how objective medical evidence supports RFC arm and hand limitations, no logical bridge exists and meaningful review cannot occur).

     Moreover, because the ALJ found the opinions of the state agency reviewing physicians and Plaintiff's treating physician to be unpersuasive, an evidentiary deficit occurred, and the ALJ did not identify an evidentiary basis to support her RFC assessment, beyond the conclusory statement that the RFC is supported by physical examinations, imaging, and improvement with treatment. Even within that conclusory statement there are several inconsistencies. For example, when considering Dr. Booher's opinion, the ALJ noted that Plaintiff's impairments are

supported by radiographic imaging, indicating that Plaintiff's symptoms find support in the objective medical evidence. (Dkt. 14-2 at 22-23, R. 21-22). The ALJ also discounts Plaintiff's symptoms due to her normal physical examinations, but then also states that Jannah had an abnormal examination of her hands. (Id.). Additionally, the ALJ points to Jannah's improvement with treatment for her elbows, but neglects to mention any subsequent doctor's visit where Jannah reports that her elbow pain has persisted despite treatment. (Dkt. 14-8 at 72, R. 655).

Additionally, it is also not entirely clear whether the ALJ acknowledged that Plaintiff's treating physician, Dr. Booher, concluded that Jannah would have considerable difficulty with tasks involving handling and fingering, because the ALJ acknowledged only a portion of Dr. Booher's report in her opinion, in contravention of Seventh Circuit case law. (Dkts. 14-2 at 22, R. 21; 14-7 at 262, R. 583); *see Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) (citing *Godbey v. Apfel*, 238 F.3d 803, 808 (7th Cir. 2000) (ALJs may not address mere portions of medical reports, especially those of treating physicians). Dr. Booher's conclusion that Jannah would have difficulty with tasks involving handling and fingering is especially important because each of the three jobs cited by the vocational expert require frequent handling and fingering. *See* 222.687-010 Checker I, *DICOT 222.687-010*, 1991 WL 672130; 559.687-074 Inspector and Hand Packager, *DICOT 559.687-074*, 1991 WL 683797; 706.684-022 Assembler, Small Products I, *DICOT 706.684-022*, 1991 WL 679050.

The ALJ provided a select summary of the objective medical evidence and then a conclusory statement that the assigned RFC limitations were supported by the evidence. The ALJ however, provided no analysis connecting the evidence to her conclusion. Without that analysis, no logical bridge exists, and this matter must be remanded for further consideration of Jannah's arm and hand limitations.

## V. CONCLUSION

For the reasons detailed herein, the Court **REVERSES** the ALJ's decision denying the Plaintiff benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four). Final judgment will issue accordingly.

So ORDERED.

Date: 3/24/2022

Doris L. Pryor
United States Magistrate Judge
Southern District of Indiana

Distribution:
All ECF-registered counsel of record via email.